May I please the court? My name is Jens Schmidt. I represent the appellant Calvin Graham, the paramedic. I'm going to use 10 minutes of the 20 minutes allotted to the defendants for oral argument, and Tom Armacino, who represents Dr. Hersher, will take the remaining 10 minutes. I'm going to try to reserve a couple of minutes for rebuttal. The district court erred in denying Graham's motion for summary judgment against Webb's Section 1983 claim. Graham is entitled to qualified immunity for two reasons, both of which are legal issues. One is that the evidence, when viewed in the light most favorable to the plaintiff, is insufficient to prove an Eighth Amendment violation. And the second is that the law did not provide Graham fair warning that his conduct under the circumstances he faced was clearly unconstitutional. It's important for the court to understand that Webb's claim against Graham is really based on a pretty limited set of facts. And those facts occurred during approximately five and a half hours on her third and final night in the Douglas County Jail. The evening before, Graham had accompanied Webb, had checked Webb into Dr. Hersher's regularly scheduled Friday evening medical clinic at the jail, which was scheduled between 6.30 and 7.30 that evening. He checked her in so that Dr. Hersher could examine her for her complaints of a headache that had been going on for several days. Dr. Hersher thought she was suffering from a sinus infection or a tension headache. He prescribed Motrin for her and instructed Graham to contact him if her condition worsened. I thought he said contact him if her condition did not improve. If the condition either worsened or did not respond to treatment. Correct. He gave them Motrin, and if that didn't get rid of the headaches, he wanted to know. That's correct. Motrin did not get rid of the headaches. Well, that evening. That's what she said. That's what she says. That's correct. And Graham said, well, you take Tylenol or something like that. He gave her a couple of tablets. Yeah. He did not call the doctor. Well, an hour and a half later, he did not call the doctor. That's correct. And an hour and a half later, she had her seizure. But on the night of the clinic, he gave her the Motrin, and that's the only contact that Graham had with her on that second evening. The doctor gave her Motrin. Correct. And called me if she didn't improve. She doesn't improve, complains again. And Graham, instead of calling the doctor when she doesn't improve, gives her Tylenol. Well, from Graham's perspective, her condition didn't worsen. He shows up the next night, her final night in the jail. He goes on duty at 4 o'clock. During his 5 o'clock medication rounds, he gives her the Motrin, her final dose of Motrin for the day. And there's no evidence in the record that at that point she complained that her headache had gotten any worse. At 9.15, she complains that she still has a headache and asks for more Motrin. And at that point, Graham tells her that she's had the dosages of Motrin that she's allowed to have during the day. And he gives her Tylenol. His testimony in the record is that in his judgment, her condition had not worsened. And about an hour and 15 minutes later, Deputy Nofsinger reports to Graham that Webb is complaining of a terrible headache. And Graham responds that he will check on her as he's doing his rounds. Unfortunately, about 10 minutes later, she suffers her seizure and an ambulance is called and she's transported to the hospital. Now, with respect to the Eighth Amendment claim, Webb has to prove two things. First of all, that the objective part of the test, that Graham either denied, delayed, or interfered with her medical care. And secondly, that he did so with deliberate indifference. That is, he was aware of and consciously chose to disregard an excessive risk that she was suffering from a serious medical condition. The evidence is insufficient to prove either one. Now, first of all, with respect to denying medical care, it is true that he did not call Dr. Herscher when at 9.15 she said, I've still got a headache. However, it's fair to say, based on the record, even viewing it in the most light, most favorable to the plaintiff, that Dr. Herscher left it to Mr. Graham's judgment as to whether her condition wasn't getting any better and warranted a phone call to the doctor. And Graham's testimony is that I didn't think that things were getting any worse and I wanted to see if the medication was going to work. Now, with the benefit of hindsight, you can question whether that was the right judgment call on his behalf. But to say that he denied, delayed, or interfered with medical treatment is not a fair characterization of the record, even when you view it in the light most favorable to the plaintiff. Moreover, and very importantly, if the plaintiff's claim, and this really is the plaintiff's claim, against Graham is entirely based on his failure to call Dr. Herscher, there must be evidence that that delay or failure to call Dr. Herscher played a role in either causing her cerebral aneurysm or causing the consequences of that cerebral aneurysm to be even worse than it was. And there is no evidence in the record on that critical element of causation. Turning to the second element of the... Does that go to the qualified immunity or just to the summary judgment? Because I understand that our interlocutory review was limited to denial of qualified immunity, not to denial of summary judgment on practice. It goes to the qualified immunity issue. And the reason it goes to the qualified immunity issue is that it goes to the first objective piece of the Eighth Amendment analysis, and that is whether he denied, delayed, or interfered with her medical care. And the court has interpreted, and it's actually the Ninth Circuit has said in the Terhune case that we cite, that where the claim is based on delay, there must be evidence that the delay contributed to the medical problem. And my point is that even if he'd immediately called Dr. Herscher at 9-15 and said she still got a headache, there's no evidence that the intervening hour and 25-minute delay contributed to the medical consequences she suffered. With respect to the second piece of the Eighth Amendment claim, that's the subjective piece, and that's where... Would there be a permissible inference from a jury from the evidence that the doctor said, call me if it doesn't improve? No, because this is a complicated medical... My thinking is sometimes doctors will give you a treatment when they don't know what the disease is. The treatment is diagnostic as well as... I don't think that's a fair... That's not a fair inference for a lay person to do without the benefit of some medical guidance from a qualified expert. A reasonable lay juror could not reasonably infer that the hour and 15 minutes between his last visit to Ms. Webb and her seizure contributed to the fact that she then suffers an aneurysm, goes to the hospital, has a stroke in the hospital, and has these admittedly horrible medical complications as a result. On the second component of deliberate... Before you go, I want to ask one question. You suggested that Webb is going to have to show that the delay in calling... Graham's delay in calling Dr. Herscher caused the aneurysm? Either caused, contributed to the aneurysm, or made her medical condition worse than it otherwise would have been. All right, but that would be a little broader than causing or contributing to the aneurysm. That is, if his delay has contributed to the effects of the aneurysm. So, for example, if somebody suffered an aneurysm and simply said, well, I'm not going to call the ambulance, he can't be accused of causing the aneurysm. Correct. But he certainly contributed to the damages that follow from the aneurysm. Correct, but there's no evidence of that. There's no evidence in the record that the delay even contributed to the complications she suffered. Although delay, if at some point we could say, gee, at this point you should have called Dr. Herscher, and it turns out that half an hour later she has the aneurysm, then at that point we might say, okay, had we gotten her to a hospital a little earlier, perhaps we could have saved something here. Well, with all due respect, I think at that point you're speculating, at least insofar as what's in the record, because, for example, we don't even know if Dr. Herscher was, A, available to take the call, or, B, what he would have said if he'd received the call. I mean, you have to build the plaintiff's claim from that point is really built on a series of speculations all culminating in he would have received the call, he would have immediately told them to get her to the hospital, and they could have done something for her at the hospital that was different than what was done for her. Let's see, if Graham doesn't know any medicine, then I would think he'd have to follow doctor's orders. Correct. And the doctor says that his orders to Graham were call him if Stacy Webb had an increase in headaches, that didn't happen, or if her headaches recurred after treatment. Well, and again, at that point he didn't say how much more treatment, and so there's some element of judgment there for the paramedic to make. Remember, Mr. Graham sees her that Friday night. Exhausted the full daily dose of the Motrin. Right, and so then you get to the 915 when he gives her the Tylenol, and the question becomes would the outcome have been different if he had immediately called Dr. Herscher then. My time is up. I'm just going to conclude by saying that there's also insufficient evidence of the subjective deliberate indifference component, and we respectfully request that you reverse and remand with instructions to enter judgment for Calvin Graham on the Section 1983 claim. Thank you, Counsel. Thank you for this opportunity. I represent Dr. Luke Herscher. He's an osteopath who lives and practices in Douglas County. I don't quite understand what Herscher is doing here on the interlocutory appeal. I thought he didn't move for qualified immunity in district court. He probably was correct in not moving for qualified immunity because he's a private contractor, and the Supreme Court decided that prison guard's case. We don't review denial of summary judgment on an interlocutory appeal. I don't understand what he's doing here. Understood, Judge. The court in Saussure said a court required to rule on a qualified immunity issue must first look at a threshold issue, and the threshold issue is if no constitutional right would have been violated, then we don't go to the next inquiry. Why would we even get as far as that first step of conducting a review on a qualified immunity issue if he didn't move to dismiss based on qualified immunity in district court? We moved to dismiss on the threshold issue, threshold issue of the constitutional violation. We've cited the Babu case, which indicates that although that case was decided with private guards who were contract employees working specifically, that it is sometimes appropriate for an appellate court to pass on an issue of law if the trial court did not look at that issue. And what we're saying in this case, because qualified immunity is an issue of law, we brought up the threshold issue. It's an issue that we put in our affirmative defenses. It's an issue that counsel briefed in their briefs, and it's an issue of law that we're now bringing before you. The Janus and Walmart case... You didn't bring it before the district court. However, you say you did bring the qualified immunity defense for Dr. Herscher to the district court? Judge, we raised qualified immunity as an affirmative defense. In your answer? In our answer. Now, then the summary judgment proceedings go on. Correct. Did you say, well, Dr. Herscher is entitled to qualified immunity? Qualified immunity was not mentioned in the brief. Pardon me? Qualified immunity was not specifically spelled out in the motion for summary judgment at the district court. But then I think you just said you did present it to the district court, but you're just saying because it was in your answer? It was in the answer. And the reason I say, the reason I make a distinction about it being in the answer, Judge, is in the Janus and Walmart case in this circuit, Walmart tried to raise an issue of quasi-contract after the trial. And this court indicated that in our discretion, we may look at an issue not below if it's an issue of law, if it's something that's been brought up, and if it's not going to be a surprise to the other side when it comes up, or if there's some other fact. It surely won't come as a surprise that Dr. Herscher might try to assert qualified immunity here. Correct. But it is a surprise that we would take an appeal on something that hasn't been argued below, right? Understood. And which would mean that after this proceeding, I would go down and I would raise my qualified immunity. And the judge would get the first shot at it. And she would take a look at it. And for the same reasons, likely, that she ruled on the county's issue, we'd be back here in 16 months. My position is under the Saussure decision where it says when we're looking at qualified immunity, our first threshold is looking at constitutional issues. And, sure, I can stand here and say, artfully, I should have said qualified immunity in the brief. But at this point in time, I believe that the Bugo case, the Janus and Walmart case, allows this court now to say it was raised in the answer. It was raised by co-defendant. The constitutional arguments are a piece of it. And under the Saussure case is a threshold issue that this court can take an opportunity and look at it. I don't know that it's so plain that things would go the same way and you'd be back here in the same posture and we'd just be wasting a year and a half of everybody's time. The reason is Richardson v. McKnight, the Supreme Court decision about the private prison guards, would seem to put Dr. Herscher in quite a different position than the jail guards. Dr. Herscher is in a much different position than in the Richardson court, Judge. Maybe that'll be what the case is about, whether Richardson is distinguished. Correct. But it still seems to me like a different case from the jail guards' case. This is a different case from the jail guards' case for a host of reasons, a variety of reasons. The jail guard case in Richardson and the other cases that the plaintiff has cited in this situation all deal with groups of individuals, companies who are contracting the privatization of jails and institutions. In this case, we have an osteopath who for 15 years was a jail doctor. Part of his practice was to be a jail doctor. We talk about in the Richardson case and in the Jensen and Lane County case that we don't give qualified immunity to these doctors because market forces are going to clear that up. This is not a situation where we're in San Francisco, where we're in Portland. We're in Douglas County. We're in Roseburg. And the transcript before you shows that for 15 years, Dr. Herscher did this work. For 15 years. And in 2000, the county couldn't afford it. The county had to hire one doc to do county services, health services, and the jail. This is not a situation like Richardson where market forces are going to affect a place like Douglas County. And I think Richardson was very specific when they spoke to their preclusions. They said, a private firm systematically organized to assume a major lengthy administrative task limited by the government undertakes the task of provident and potentially competition with other firms. This case does not involve a private individual. Briefly associated with a government body. Serving as an adjunct to a government in an essential government activity. But that's what Dr. Herscher is. A private individual giving essential medical services to individuals in Douglas County. This is not a conglomerate like we have in all of these other cases. This is an individual who is outside competition. Outside the market force. And should get the benefit of qualified immunity. The transcript that was put before you shows his contract. That he has similar benefits. I understand this. It still seems to me as though you're making a concession rather than anything else. And the concession is that his case would be an elaborate discussion of Richardson v. McKnight. Whether it's distinguishable or applicable. And Richardson v. McKnight doesn't even come up with the jail guard's case. Your argument would be that the ratio decedendi of Richardson is this economic rationale. So it does not apply to small firms or solo practitioners. That is correct. And another way of looking at it is you want to find out what the rule is in a Supreme Court decision. And the rule of Richardson is no qualified immunity for private firms. Correct. I can imagine a court going either way, I suppose. I do believe, though, that under the Boe reading, that in a de novo review like this, this court has the ability to look at it at this time. We're not really de novo reviewing because you didn't move forward there. I believe that under Saussure, the threshold analysis is the constitutional arguments. And under the constitutional arguments that were made within are arguments below. But that allows this court some basis for delving into the further issue. I think the only thing that wasn't done below is mention the words qualified immunity because the analysis was there. How do we even know that he's basically put it as a small-time solo practitioner who doesn't participate in the economic incentives of Herman Richardson at all? Well, I believe the record before you in Dr. Herscher's deposition that's been both in our excerpt of the record and a certain portion of Mr. Beardsley's record goes through what Dr. Herscher's history is. He signed it as an individual. The contract that you have shows he signed it as an individual. In Cunningham, it talks about this group. Wexhold is talked about in one of the cases. In Henson, in Jensen, it was psychiatric associates. There's information within the record that shows that this is a small-town doc working for the county. He doesn't have a whole lot of paramedics working for him. There's a whole bunch of government contractors. There are government contractors that work with him at the jail. They don't work for him. I'm going to reserve one minute. May it please the Court. Counsel, my name is Steve Beardsley, and I represent Stacey Webb. I'm from Rapid City, South Dakota, and my co-counsel, Dan Holland, is in the back of the courtroom. He's from Eugene, Oregon. Thank you for giving me the opportunity to present this argument to the Ninth Circuit. I'm going to take this a little bit out of order because of how it ended with Mr. Armacino. There is no question that Dr. Hersher did not move before District Judge Aiken, indicating that he should have qualified immunity. The issue was never presented, and this Court is absolutely correct. It's not de novo review because it was never done. Secondly, in the Richardson case, there's nothing in there that indicates whatsoever that if it's a large corporation or a small corporation, it makes a difference. The fact of the matter, Richardson stands for the proposition that if you're a private individual doing state functions, you don't have a right to qualified immunity. So as a result, it's our position that he's wrong in both aspects before we ever get to the deliberate indifference argument. And he's wrong in that aspect, too. Now, let me back up just a little bit, if I might, Your Honor. First of all, we made a motion to dismiss this entire appeal for lack of jurisdiction, and the reason was there wasn't any final order. And so under the case of Johnson... Wait a minute. I'm distracted by the main concern that's on my mind, and I'm having trouble absorbing it. I wonder if you could deal with my main concern and then... Sure. What's bothering me about your case is an inmate has a headache. People get headaches all the time. Nearly all headaches are harmless. They're just uncomfortable and then they go away. Nobody knows that she has an aneurysm that's about to pop and cause serious permanent brain damage. The doctor doesn't know it when he finally gets there, which is Tuesday night or Wednesday. The doctor looks her over Friday. He doesn't know. The jailer doesn't know. Nobody knows it's as bad as it is. So even if they don't treat it very seriously, what is the showing of deliberate indifference in not treating a headache very seriously? Most of us don't treat our own headaches very seriously. Okay. Here's the distinction, Your Honor. I appreciate the question. First of all, she comes in on December 13th and writes headaches times four days. I ask in deposition of Dr. Hersh, I say, is that significant to you? It's been four days. This lady's had the same headache for that long. Yes, that is significant. Okay. You didn't see her until another day and a half went by. Now it's five and a half days. She's gone five and a half days with a constant headache and they can stand here and say they didn't write severe down. Trust me. These records are a number of records that I believe and have argued to the court were fabricated. We don't know why they don't make records, but five and a half days now before you ever see the doctor. It doesn't sound like that's a big deal. I mean, a lot of students go through their whole exam week with a headache. A lot of judges maybe go through the whole argument week not feeling so great because you work too late and you work too hard. Most of us ignore a lot of symptoms in our health. Let me finish though, Jeff. Okay. I'm sorry. I don't mean to cut you off. Okay. Now after five and a half days. Now the doctor says if we don't get rid of it with the Motrin, let me know. Call me. Okay. Now he thinks it's significant enough that it doesn't get rid of it with Motrin, which is, you know, it should be two, three hours. You find that out. We go another day and a half before she has an aneurysm. The expert opinions are, and have been filed with the court, that, one, you're supposed to take a family history. In this instance, the family history is that two different people in her family have had brain aneurysms. Okay. That makes a difference. You're supposed to take a medical history. Didn't do any of that. Okay. You're supposed to then keep track of what is happening because now we have a long-standing headache. I think that this would all be a malpractice case for negligence against the doctor. He might not have followed good medical procedure. He might have seen a yellow flag had he found out about the family history. Well, there's no question that that's true, but it goes beyond that to deliberate indifference because of all of what you're about to hear. And part of it was in the brief, and that is it's a cesspool down there. Everybody wants to call this a rural community. It's a large jail. We've got four EMTs under his bailiwick. Okay. Four EMTs. One is fired because he's addicted to drugs. The second one is fired because he's stealing drugs. The third one is fired because she's had so many errors, 26 in a two-week period, seven in a one-day period. You're arguing about deliberate indifference of the doctor. Right. And the reason it's important is that the doctor had these four EMTs under him who have all been fired. He had no policies and procedures to deal with people at the jail. He's got prescriptions. He didn't hire those people, did he? He was not their employer. They were under his supervision and Sergeant Somody, and I hadn't gotten to Sergeant Somody yet. Sergeant Somody was the jail supervisor who had a mental breakdown and had to send a SWAT team to his house. Because he was either going to shoot himself or somebody else. Yeah, but how does this show an Eighth Amendment violation? I saw a lot of this stuff, and it was pretty hard for me to see how this showed deliberate indifference towards Ms. Webb. Well, the deliberate indifference is- that doctors ordinarily prescribe. He issued instructions. And that just doesn't sound like deliberate indifference. Again, it may be negligence. Maybe he should have done more, but it doesn't sound like he doesn't care and that he's doing something in order to sort of punish her, which is what the Eighth Amendment usually addresses. The fact of the matter is that I dispute he ever ordered Calvin Graham to call him. Calvin Graham says he didn't order him to call him. The doctor says he did order him to call him. There's no order. There's no written deal. Dr. Hersher saw her, sent her on her merry way. And the evidence is non-conclusory. It is subject to a dispute, which exactly what Ann Akin said- You have two burdens. You have two burdens, counsel. And the first one I'm having trouble with, and the second one's even tougher. The first one is, how does this show a violation of the Eighth Amendment? And even if you could show me that it's a violation of the Eighth Amendment, you have to show me that it's so clearly established that effectively Dr. Hersher knew at the time that he was violating the Eighth Amendment. There has to be questions of fact on whether or not there was deliberate indifference. There are questions of fact. It has to be determined by someone that is looking at the evidence and deciding whether there are questions of fact, whether his treatment, not only in running the facility, like Hoptewick case, that talks about there's no staffing is inappropriate, and there's a list of about six different things that fall exactly into what happened with Dr. Hersher. Dr. Hersher comes in and acts like, well, geez, I did everything I could, and I gave an order. Then everybody turns to Graham and says, Graham didn't do what he was supposed to do. The fact of the matter is, Hersher didn't ever give that order. He signs an affidavit later that says he did. Well, if that's the case, then Mr. Graham is entitled to qualified immunity. Well, see, that's the problem, is that I don't believe Graham is entitled to qualified immunity because, one, he's addicted to drugs. The addiction to drugs, I have to say, just doesn't impress me at all. Well, he, in fact, in his testimony in his second deposition, acknowledged that it did affect his ability to work, that it did affect his – But that doesn't demonstrate deliberate indifference to Ms. Webb. It may have shown that he wasn't qualified for what he was doing. I mean, it's not a lot of the things that you're talking about, but the EMTs with this history may go to whether the county is liable. And there you have my attention. But I'm having a very difficult time seeing as how either Mr. Graham or Dr. Hersher has engaged in deliberate indifference and how it was so clearly established that they knew at the time that they were violating her Eighth Amendment rights. Well, let's make an assumption, first of all, that Hersher's actually telling the truth about something, okay? And Hersher says, I gave you an order. You're supposed to call me if it recurs. It recurred not an hour and 15 minutes before. It recurred a day and a half. It never went away. So Graham took it on his own to ignore it, just as his record indicates, that he's passed out medications whenever he felt like it. He has deprived people of medications. He has done – Deprived her of any medication that she was entitled to? Well, here's the problem. Counsel, you keep arguing things that seem to me just utterly irrelevant. And the more you argue, the less impressive it gets. Now, did Mr. Graham deny her something that she was entitled to? Yes. A phone call to a doctor. Is that right? That's for sure. And he gave her something that the doctor didn't tell him to give her, which was Tylenol. Well, here's the thing. When somebody's complaining of a headache, she's exhausted the emotion that she can have, and he gives her Tylenol on his own. But that demonstrates deliberate indifference to her headache. Here's the problem, okay? The problem is that there has been fabrication of evidence. I don't believe he gave her things. Does any of that matter? Well, it does. Counsel, let's assume for purposes of discussion that the guards are a bunch of criminals and bums, and they're all liars. Just for purposes of discussion, we'll hypothesize that. Let's assume further, for purposes of discussion, that the county is incredibly negligent in keeping these guards on its staff and is also negligent in keeping this doctor as the jail doctor who's not even an M.D. And let's assume the doctor was negligent too. And let's assume the guards were negligent, not asking enough questions about family history. I'm having the same trouble Judge Bidey is having in tying this to the Eighth Amendment with respect to this particular plaintiff. Having a headache for a few days and taking one over-the-counter drug and then another, it's the way most people would treat themselves. So I can't see why it's deliberate indifference for the prisoner to do the same thing. Here's the problem. The problem is this. And I keep trying to explain the fabrication of evidence and how it comes in. If I can just have 30 seconds to explain one example. One example is that they allegedly gave her Motrin two different times, according to their records, after she left and went to the hospital. The ambulance has come and she's gone. Their records that they want this court to believe, and they want the district court to believe, say that someone went along and found her at the hospital and gave her drugs. Not once, but twice. No. It's mild anti-inflammatory. They don't realize she seriously ill. No, here's the thing. They admit that they didn't and that the logs are a lie. Okay, so now I don't expect Graham to come... They wouldn't say they're lying. They pretend they gave her this mild anti-inflammatory over-the-counter drug when they didn't. So what? Here's my point. Deliberate indifference towards medicine. My point is this. If you put it together, one, I don't believe the records, which they cannot be believed because they're fabrication. Two, once you don't believe the records, and then you couple it with, as the doctor claims, that he said, call me if it recurs. It did recur, no question about it. Nobody bothered to call. She's obviously in distress, and nobody bothers to call. That's deliberate indifference to what the doctor has ordered. In fact, there are cases that say you have to follow doctor's orders or you're in violation of the Eighth Amendment, cruel and unusual punishment. And that's what occurs here. The problem is the people, the court, the counsel... You don't expect someone, any more than a criminal, to say, you know what? I guess I didn't give them the medicines. This is not a strict liability offense. No. If they failed to give her the medication, it may be because they were negligent. It may be because of a lot of things. And, again, you may have good tort claims against them on that basis. But our question is Section 1983 as to whether they have violated the Constitution of the United States. I understand. And one of the things that court cases say is that if you don't follow the doctor's orders, particularly regarding prescriptions, they are deliberately indifferent. And that's exactly what is occurring here if you believe what Dr. Herscher... Even if you were negligent, if you had two pages stuck together and you just simply didn't see the doctor's orders, that would give you an Eighth Amendment violation? No, if you blow them off. You know, in these records... It's deliberate indifference. I mean, most of it's just an over-the-counter drug. A lot of us, if the doctor doesn't think we have anything that's wrong with us, that we don't need more than an over-the-counter drug, aren't going to follow his orders for ourselves. But the order of the doctor, if it's to be believed, is, you've got to follow up, you've got to check on her, and, by the way, if she doesn't improve, you've got to call me. Why do you need to call me? Because then I can make some sort of decision, what do we do next? Because we have this family history... I would think part of the negligence case against the doctor would be, you didn't tell the guards that this was a potentially life-threatening or brain-threatening potential illness, and it was extremely important to call any time, day or night. You made it sound like what you thought it was, nothing, just a minor headache. Judge, from the very beginning, this wasn't a minor headache, and that's why he gave this alleged order that says, if he doesn't get better, call me. Why? Because it wasn't a normal headache. A normal headache, if that had been the case, why would he give such an order? It wouldn't be that big a deal. I've had outstanding instruction from doctors. I go in, I complain of muscle ache, and he says, well, I think you've got tired muscles. But if it doesn't get any better after a couple of days, call me. Pretty standard instruction. I've seen it on commercials on TV. But the difference is that she can't call him. She is at the mercy of the guards who then decide whether I should even check on her or not, or if I should find out whether it's recurring, or if it does recur, should I bother to call him? That wasn't what his instruction was. What do you have of their deliberate indifference, other than the failure to call the doctor? Well, we have the history of dealing with medications. We have the fact there are no procedures or manuals there provided by it. That's a claim against the county. That's not a claim against Mr. Graham. Well, I didn't know if you're referring to Graham or you're referring to the doctor. I don't understand why the doctor's in here. He didn't ask for qualified immunity. I agree. Okay, I'll talk about Graham. I agree. Herscher shouldn't be in here. He didn't even make a claim for qualified immunity. If we can assume that, we'll talk about Graham. What Graham didn't do was his appropriate care for her. He didn't call the doctor. And we don't know whether he was high on drugs that day or not, because he's not going to admit that. But there's been an investigation set forth in which he was at work and admitted he was at work high on drugs. That doesn't sound like the kind of person that's going to care much for somebody else that's laying in a cell with an enormous headache. Did he take the drugs with the intention of not serving Stacey Webb? No, but that's the repercussion. Well, that's the repercussion, but why is it an Eighth Amendment violation? Well, it's an Eighth Amendment violation because it's a deliberate indifference. You're kind of laid back because you're high on drugs and you don't care about the particular inmates. It's grossly negligent, for which, if you're correct, I hope that the state of Oregon will provide a tort remedy. But I don't understand why there's a constitutional remedy. Well, there's a constitutional remedy because these people are at the mercy of EMTs, guards, doctors that they bring in. And it's a constitutional issue because our Constitution protects those people that cannot go protect themselves. They can't go out to particular doctors. They can't go to EMTs. They can't go to nurses. You know, the fact of the matter is they're dispensing medications in this jail through EMTs that are a violation of Oregon law. They can't even do it at all. It has to be done by nurses. It's a violation of Oregon statute. They don't care. So would Mr. Graham have followed Oregon law and not given her the motion? If Mr. Graham had followed Oregon law, he could have at least informed somebody, Dr. Herscher, I can't do that. Maybe we ought to get a competent nurse in here to do it because I can't. And Dr. Herscher ought to know. And Ms. Webb would have been better off if he had not given her the motion? She would have been better off, yes, because it thins the blood, number one. Number two, then maybe there would have been some competent care. The fact of the matter is that you can't just ignore the entire circumstance and just say, well, geez, I guess Graham must have done it right because there are some records that are not reliable because there's some claim by Graham. But Graham admits he didn't even bother to call when the doctor ordered him to call. Thank you, Ken. I appreciate it. Thank you. Mr. Armacino has given me 30 seconds of his time, which I'll use to say that Calvin Graham is entitled to qualified immunity for three reasons. One, the evidence in the light most favorable to the plaintiff doesn't show that he withheld or later denied medical care to her. Second, that he acted with deliberate indifference. And three, prior case law did not provide clear warning that his conduct was clearly unlawful under the circumstances he confronted. Thank you, counsel. Dr. Sakamoto did not take a medical history. Dr. Chung did not have a differential diagnosis, which included drug overdose. In Steele v. Choi, the aneurysm case, the court said that there was no evidence that the symptoms presented by the patient were only consistent with subarachnoid hemorrhage. A broken leg you must set. If someone's not breathing, you perform CTR. But in a situation like this where headache is the most common thing in the jail, it's not deliberate indifference on behalf of Dr. Chung. Thank you very much. Thank you. Questions? Webb v. Douglas County is submitted.
judges: Thompson, Kleinfeld, Bybee